# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| RYAN M. DICKE, | CASE NO. 3:20-CV-01745-JJH |
| Plaintiff, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION |
| Defendant. | |

## INTRODUCTION

Plaintiff Ryan Dicke ("Mr. Dicke") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 7, 2020, pursuant to Local Rule 72, this matter was referred to a magistrate judge for preparation of a report and recommendation 2, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend that the Court **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Mr. Dicke filed for DIB in February 2018, alleging a disability onset date of March 26, 2014. (Tr. 228). Mr. Dicke later amended his alleged onset date to January 14, 2017. (*See* Tr. 15). His claims were denied initially and upon reconsideration. (Tr. 99-112; 114-26). Mr. Dicke then

1

requested a hearing before an administrative law judge. (Tr. 165-66). Mr. Dicke (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on January 18, 2019. (Tr. 34-66). On August 13, 2019, the ALJ found Mr. Dicke not disabled in a written decision. (Tr. 12-34). The Appeals Council denied Mr. Dicke's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955, 404.981). Mr. Dicke timely filed this action on August 7, 2020. (ECF #1).

Mr. Dicke appeared before the ALJ in an earlier administrative hearing; the ALJ denied this prior application in a decision dated January 13, 2017. (Tr. 15, 67-91). The Appeals Council denied his request for review. (Tr. 92-95). This Court upheld that decision. (Tr. 15, 129-46; *see Dicke v. Comm'r of Soc. Sec.*, No. 3:17-cv-02414-DAR (N.D. Ohio Mar. 25, 2019)).

## FACTUAL BACKGROUND[1]

### I. ADMINISTRATIVE HEARING

Mr. Dicke does not contest the ALJ's description of the medical evidence, merely the ALJ's interpretation of such evidence, particularly with regard to the hypotheticals posed to the VE. (Pl.'s Br., ECF #11 , PageID 720-21). As such, I summarize only the portion of the hearing containing the VE's testimony below.

For all hypotheticals, the ALJ asked the VE to consider the following hypothetical individual: A hypothetical individual of the claimant's age and education with the past work Mr. Dicke described earlier in the hearing (*i.e.*, hose maker). (Tr. 45, 59).

---

[1] Mr. Zinn does not challenge the factual basis of the ALJ's decision; rather, he couches his argument as an attack on the VE's testimony and the ALJ's RFC determination. (Pl.'s Br., ECF #11, PageID 721). As such, he waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). I summarize only the evidence relevant to that claim.

The ALJ described the first hypothetical individual as capable of:

> [a] full range of light work; this individual can lift, carry push, and pull 20 pounds occasionally/10 pounds frequently; this individual can sit for six hours out of an eight-hour workday; could stand and/or walk for six hours out of an eight-hour workday; this individual must have the ability to alternate between sitting and standing at their option every 30 minutes for one or two minutes so long as this individual is not off task or has to leave the vicinity of the workstation; this individual can never climb ladders, ropes, or scaffolds or crawl; they can occasionally climb ramps and stairs, balance, crouch, kneel, and stoop; this individual cannot move their head to the extreme ranges of motion, but can move their body to accommodate this action; this individual can only occasionally reach overhead with the bilateral upper extremities; this individual can have only occasional exposure to extreme cold, heat, and humidity along with dust, fumes, odors, gases, and other pulmonary irritants; this individual cannot work around unprotected heights or unprotected moving, mechanical machinery; this individual can only be exposed to moderate noise as defined by the <u>Dictionary of Occupational Titles</u>; this individual can have occasional exposure to flashing lights; this individual can understand, remember, and carry out simple routine tasks, make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day and few expected changes; this individual cannot perform work where the pace and productivity is controlled by an external source over which the individual has no control such as a conveyor belt or assembly line.

(Tr. 59-60). In response, the VE testified that the hypothetical individual could not perform past work, but there would be other positions in the national economy that the individual could perform. (Tr. 60). Namely, the hypothetical individual could work in the following positions:

- **Housekeeping Cleaner**
    - DOT Code 323.687-014; light; unskilled
        - 400,000 in the National Economy
- **Photo copy machine operator**
    - DOT Code 207.685-014; light; unskilled
        - 27,000 in the National Economy
- **Addresser**
    - DOT Code 209.587-010; sedentary; unskilled
        - 11,000 in the National Economy
- **Lens block inspector**
    - DOT Code 716.687-030; sedentary; unskilled
        - 8,000 in the National Economy

(Tr. 60-64; *see also* Tr. 28).

3

For the next hypothetical, the ALJ asked the VE to testify as to "regular breaks, on-task requirements, and acceptable absences such that a person cannot perform at these levels due to symptomatology they could not perform work on a regular and continuing basis." (Tr. 64). The VE testified that, based on his experience, employers will factor in a break every two hours in an eight-hour workday for approximately 10 minutes at hour two and hour six, and for 30 minutes at hour four. (*Id.*). Any breaks exceeding that would require a special accommodation due to lost productivity. (*Id.*). Employers commonly expect 90% production, equating to at least 80% of actual time spent on task. (*Id.*). Absenteeism is variable among employers, but commonly employers will not permit more than two days per month absent. (*Id.*).

Mr. Dicke's counsel did not ask any additional questions of the VE. (Tr. 65).

II.     PERSONAL AND VOCATIONAL EVIDENCE

Mr. Dicke was 34 years old on the alleged onset date of her disability; he was therefore defined as a younger individual age 18-49. (Tr. 99; *see also* 20 C.F.R. §§ 404.1563). Mr. Dicke had past relevant work as a hose maker, DOT 752.684-030, medium, with a specific vocational preparation (SVP) of 3; however, Mr. Dicke's past work was not classified as "substantial gainful activity" because his earnings did not exceed the minimum amount required for consideration. (Tr. 18, 27; *see also* 20 C.F.R. §§ 404.1565, 404.1571 *et seq.*). Given his residual functional capacity ("RFC"), his past relevant work could no longer be performed. (Tr. 27). Accordingly, Mr. Dicke was unable to perform past relevant work. (*Id.*).

4

**III.     RELEVANT MEDICAL EVIDENCE**

Mr. Dicke does not contest the ALJ's description of the medical evidence, merely the interpretation of such evidence. (Pl.'s Br., ECF #11, PageID 720). As such, I adopt the ALJ's description of Mr. Dicke's impairments and provide it in part below. (*See* Tr. 18-29).

Mr. Dicke's severe impairments include: status-post Chiari malformation surgery;[2] chronic headaches and/or migraines; obesity; cervical degenerative disc disease; status-post bilateral knee surgeries (relocation of the patellae in 2005 with scree removal in 2010); polyarthritis/ANA positive status; and depression, anxiety, and adjustment disorders. (Tr. 18).

On June 12, 2017, Mr. Dicke underwent a functional capacity evaluation, which indicated that Mr. Dicke was able to lift, carry, push, and pull at a medium to very heavy range. (Tr. 23). Mr. Dicke could occasionally kneel, crouch, squat, and reach; frequently stand and walk; and rarely balance. (*Id.*). Although Mr. Dicke was able to perform these activities, his increased reports of pain and limits for tolerance of sustained activities indicated a range of 3-4 hours per day. (*Id.*). Recommendations from this test indicated that Mr. Dicke may not tolerate work in competitive settings, would benefit from working in a seated position instead of crouching, should avoid sustained overhead reaching, and would benefit from changes in position, either sitting or walking every 15 minutes. (*Id.*). It also recommended that Mr. Dicke have a stool to sit on at his workstation, should avoid carrying anything on stairs or climbing ladders, was limited to climbing

---

[2] Chiari malformation develops when the skull is smaller than normal or misshapen, allowing part of the cerebellum to be pushed down into the spinal canal. *Chiari Malformation Fact Sheet*, National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Chiari-Malformation-Fact-Sheet. Decompression surgery is commonly used to relieve pressure on the spinal cord and restore the normal flow of cerebrospinal fluid. *Id.*

three rung ladders, should avoid walking backwards, and should only crawl on a padded surface or with knee pads. (*Id.*).

The ALJ described Mr. Dicke as having pain radiating down his neck, through his shoulders and arms, and occasional blurred vision. (Tr. 22). In addition, Mr. Dicke experiences migraine headaches with light sensitivity, nausea, and pain; these headaches will last around 8 hours. (*Id.*). Mr. Dicke manages these symptoms with medication, but still experiences sleepiness, dizziness, difficulty with concentration, losing his train of thought, and memory issues. (*Id.*).

In 2011, Mr. Dicke underwent Chiari malformation decompression surgery. (Tr. 23). An MRI of the brain on September 10, 2014 showed chronic posterior occipital/suboccipital decompressive surgery with chronic typical postoperative changes at the craniocervical junction, mild disc protrusion at C5-C6 abutting the anterior margin of the spinal cord. (*Id.*). Neurology records from March 2017 indicate no significant findings on objective examination and continued medication management. (*Id.*). A follow up appointment in May 2017 noted worsening of headache symptoms but continued medication management. (*Id.*). Neurology progress notes form April 2018 show migraine headaches, limited range of motion, radicular pain in the arms, and moderate cervical facet tenderness. (*Id*).

Mr. Dicke retained normal strength in both upper extremities and no sensory deficit. (*Id.*). Mr. Dicke's physicians recommended cervical epidural steroid injections, consider repeating cervical facet blocks at C2-C4, and consider rhizolysis (surgically cutting the nerve). (Tr. 23-24). Mr. Dicke had an epidural steroid injection at C7-T1, which he tolerated satisfactorily. (Tr. 24). Neurology notes from February 2019 noted stability in Mr. Dicke's headache symptoms. (*Id.*).

In September 2018, Mr. Dicke complained of shoulder and elbow pain. (Tr. 24). At this visit, his BMI was noted at 37.88 (indicating obesity). (*Id.*). Imaging of the left shoulder and cervical spine on September 12, 2018 was entirely normal. (*Id.*). On October 19, 2018, Mr. Dicke continued to complain of radiating neck pain, numbness, and tingling in both hands, exacerbated by sudden movement, lifting, and putting weight on his shoulders. (*Id.*). Mr. Dicke was then referred to physical therapy, which he began on November 9, 2018. (*Id.*). Mr. Dicke underwent 24 sessions over eight weeks and was discharged to a home exercise program on December 13, 2018. (*Id.*). On December 14, 2018, Mr. Dicke reported only mild left shoulder pain remaining and improvement in his range of motion. (*Id.*).

Records also demonstrate a history of ANA[3] positive joint pain. (Tr. 23).

Mr. Dicke has occasionally received mental health treatment, reporting confusion, forgetfulness, anxiety, panic, and being prone to worry. (Tr. 24). However, he also reported receiving no regular mental health treatment other than seeing his psychiatrist once per year. (Tr. 22).

Even with these conditions, Mr. Dicke is able to live with his fiancée in a mobile home and is able to care for his 11 chickens, two dogs, a rabbit, and a guinea pig. (Tr. 22). Mr. Dicke is able to wash dishes, go grocery shopping, walk his dogs around the property, and tend to his raised bed garden. (*Id.*).

### THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

---

[3] Antinuclear antibodies, or "ANAs," are a type of antibody found in many patients with lupus, rheumatoid arthritis, and certain collagen diseases. *Antinuclear Antibody (ANA)*, *Stedmans Medical Dictionary* (Nov. 2014).

7

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since January 14, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: status-post Chiari malformation; cerviocogenic headaches/migraines; obesity; cervical degenerative disc disease; status-post bilateral knee surgeries (relocation of the patellae in 2005 with scree removal in 2010); polyarthritis/ANA positive; and psychological conditions variously described as depression/adjustment disorder and and [*sic*] anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours out of an 8-hour workday and stand and/or walk for 6 hours of an 8-hour workday. He must have the ability to alternate between sitting and standing, at his option, every 20 minutes for 1-2 minutes, so long as he is not off task or has to leave the vicinity of the workstation. The claimant can never climb ladders, ropes, or scaffolds or crawl and can occasionally climb ramps and stairs, balance, crouch, kneel, and stoop. He cannot move his head to the extreme ranges of motion but can move his body to accommodate this activity. He can only occasionally reach overhead with the bilateral upper extremities. He can have only occasional exposure to extreme cold, heat, and work around unprotected heights or unprotected moving mechanical machinery. He cannot perform any commercial driving. He can only be exposed to moderate noise as set forth by the Dictionary of Occupational Titles. He can have occasional exposure to flashing lights. The claimant can understand, remember, and carry out simple, routine tasks, make judgments on simple work, can respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and expected changes. He cannot perform work where the pace of productivity is controlled by an external source over which he has no control such as a conveyor belt or assembly line.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 27, 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 14, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 18-29).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*,

make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Mr. Dicke raises a single error in his brief. He contends the ALJ failed fully to consider essential testimony from the VE that found Mr. Dicke had the functional capacity to perform light work. (Pl.'s Br., ECF #11, PageID 721). The Commissioner states Mr. Dicke's argument is not an attack on the ALJ's reliance on VE testimony or the RFC; instead, it is an invitation for this Court to reweigh the evidence. (Comm'r's Br., ECF #14, PageID 734). I agree. For the reasons that follow, I decline to reweigh the evidence and recommend this Court affirm the Commissioner's decision.

The ALJ alone is responsible to form an RFC appropriate to the claimant's abilities, supported by the ALJ's evaluation of the medical evidence. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The RFC is to be an assessment of the claimant's remaining capacity for work, once the claimant's limitations have been considered. *Id.* at 632. An ALJ is to consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and

11

efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ also must determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* An ALJ "is only required to incorporate those limitations which he has deemed credible" and may reject limitations or impose more restrictions. *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010). Doing so does not mean an RFC is not supported by substantial evidence. *Ross v. Comm'r of Soc. Sec.*, No. 14-11144, 2015 WL 1245830, at *11 (E.D. Mich. Mar. 18, 2015).

An ALJ may also rely on a VE's testimony in reaching this conclusion, so long as it accounts for the claimant's limitations. *Webb*, 368 F.3d at 633. But only the ALJ has the authority to determine a claimant's medical restrictions and the resulting RFC; the VE does not determine which restrictions the claimant in fact has. *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019). Asking a hypothetical of a VE is not a finding and does not bind an ALJ to a VE's response. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020). Rather, a VE's response to a hypothetical serves as substantial evidence of the claimant's ability or lack thereof. *Kessans*, 768 F. App'x at 535-36. An ALJ may pose a question regarding a hypothetical individual including several limitations, but later determine that the VE's response is not relevant as to the claimant's abilities. *Id.* Requiring that an ALJ rely on the VE's response to the most restrictive question involving a hypothetical individual would controvert the roles of the ALJ and the VE. *Id.*

An ALJ is required to assess a claimant's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). Further, the ALJ is vested with the discretion to weigh all the evidence, resolve material conflicts, make independent findings of facts, and determine the

case accordingly. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971); *see also Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 668 (6th Cir. 2009). The district court may not step into the ALJ's shoes and try the case *de novo* or resolve any purported conflicts in evidence. *Collins*, 357 F. App'x at 668. This Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. This Court will not second-guess an ALJ's decision, if the ALJ cites to substantial evidence. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012).

Mr. Dicke does not claim the ALJ's determination was not based on substantial evidence: "[Mr. Dicke] agrees generally with the summary of medical facts contained in ALJ Mantel's Opinion. Points raised in this appeal involve the ALJ's interpretation of those facts and her opinions based upon them." (Pl.'s Br., ECF #11, PageID 720). Such a review is not the province of this Court and invites second-guessing of the ALJ's determination, which is not permissible.

In his argument, Mr. Dicke correctly states an ALJ may only rely on a VE's testimony if the question accurately portrays a claimant's individual physical and mental impairments, but if the hypothetical does not accurately portray the claimant's impairments, the VE's testimony may not serve as substantial evidence. (Pl.'s Br., ECF #11, PageID 721-22). Mr. Dicke does not raise error with the first hypothetical indicating a series of physical and mental limitations in the hypothetical individual's abilities. (*Id.* at PageID 722; *see also* Tr. 59-60). Mr. Dicke does, however, raise error with the ALJ's second hypothetical, regarding regular breaks, on-task requirements, and acceptable absences. (Pl.'s Br., ECF #11, PageID 722; *see also* Tr. 64). Mr. Dicke states that due to his ongoing

13

impairments, he will be off-task for greater than 20% of the workday and will require more than two absences per month. (Pl.'s Br., ECF #11, PageID 723-28).

But Mr. Dicke points to no evidence unconsidered or unincorporated in the ALJ's RFC determination. Rather, he relies on exaggerations of his limitations and mischaracterizations of the ALJ's determination to support his claim. (*Compare id.* at PageID 722 *with* Tr. 27-29; PageID 723 *with* Tr. 23, 26; PageID 725 *with* Tr. 22). Comparing Mr. Dicke's argument with the ALJ's determination, and applying the controlling standard of review that prohibits reweighing the evidence, I find no basis for remand.

## Conclusion and Recommendation

Following review of the arguments presented, the record, and the applicable law, I find the Commissioner's decision denying DIB supported by substantial evidence and recommend the District Court **AFFIRM** that decision.

Dated: November 19, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS** **to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.** *See United States v. Walters,* **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn,* **474 U.S. 140 (1985).**